# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| MARK BEAULIEU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket no. 1:14-cv-00023-GZS |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendant Bank of America Corporation, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint with Incorporated Memorandum of Law (ECF No. 11). For the reasons explained herein, the Court GRANTS IN PART AND DENIES IN PART the Motion.

## I.     STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction ... a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1)-(3). The Court assumes the truth of the complaint's well-pleaded facts and draws all reasonable inferences in plaintiff's favor. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Under Rule 12(b)(6), the Court generally "may consider only facts and documents that are part of or incorporated into the complaint." United Auto., Aero., Agric. Impl. Workers of Am. Int'l Union v. Fortuno, 633 F.3d 37, 39 (1st Cir. 2011) (internal citations omitted). However, the Court may "augment" the factual allegations pled in the complaint with "matters of public record and facts susceptible to judicial notice." Haley v. City of Boston, 657

F.3d 39, 46 (1st Cir. 2011) (citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003); see also Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) ("A district court may also consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'") (quoting In re Colonial Mortgage Bankers Corp., 324 F.3d at 20 (1st Cir. 2003)).

A viable complaint generally must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Bodman v. Maine, Dept. of Health & Human Servs., 720 F. Supp. 2d 115, 121 (D. Me. 2010) (denying motion to dismiss a hostile work environment claim and explaining that "the determination of whether an issue is trialworthy simply is not the same as the determination of whether a plaintiff states a claim upon which relief can be granted"). In considering a motion to dismiss, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Plaintiff must include enough facts supporting a claim for relief that "nudge[s] [his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)); see also Iqbal, 556 U.S. at 678 (stating that the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

## II.  FACTUAL BACKGROUND

### A.  Plaintiff Obtains A Loan Guaranteed by the U.S. Department of Veterans' Affairs

Plaintiff Mark Beaulieu is a resident of Gardiner, Maine and is a disabled veteran of the United States Army.[1]  (Am. Compl. ¶¶ 1, 6.)  Defendant Bank of America Corporation ("BANA") is a duly organized and existing Delaware corporation with its headquarters in Charlotte, North Carolina.  (Id. ¶ 2.)

On April 16, 2008, Plaintiff purchased a single-family residence in Augusta, Maine (the "Residence").  (Id. ¶ 8.)  Plaintiff obtained the loan through the Department of Veterans Affairs' loan guarantee program, established by 38 U.S.C. §§ 3701 to 3736.  (Id. ¶ 18.)  To finance the purchase of his home, Plaintiff executed a promissory Note in favor of Countrywide Bank, FSB ("Countrywide").  (Id. ¶ 9.)  To secure the promissory Note ("Note") (ECF No. 11-1), Plaintiff granted Countrywide a Mortgage ("Mortgage") (ECF No. 11-2) on the Residence.  (Id. ¶ 10.)

The Department of Veterans Affairs guaranteed Plaintiff's obligations pursuant to the Note and Mortgage.  (Id. ¶ 11.)  Pursuant to paragraph 11 of the Note, "the rights, duties, and liabilities of the parties to this Note are governed by [Title 38, Part 36 of the Code of Federal Regulations in effect on the date of the loan]."  (Id. ¶ 12.)  The Veterans Administration Guaranteed Loan and Policy Rider attached to the Mortgage provided:

> THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this SIXTEENTH day of APRIL, 2008, and is incorporated into and shall be deemed to amend and supplement the Mortgage … (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to COUNTRYWIDE BANK, FSB (herein "Lender") …
>
> If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date

---

[1] After two tours of combat duty in Iraq, Mark Beaulieu was honorably discharged from the United States Army. (Am. Compl. ¶ 7.)

hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instrument to said Title or Regulations.

(Id. ¶ 13.) Plaintiff alleges that the requirements of the Veterans Affairs' loan guarantee program were explicitly incorporated into both the Note and Mortgage. (Id. ¶ 19.) He further alleges that 38 U.S.C. § 3732 requires a notice of default to be sent to the Secretary for the Department of Veterans Affairs ("VA Secretary") in the event of a default in the payment of the loan. (Id. ¶ 20.)

### B. Plaintiff Defaults and Vacates the Residence

Plaintiff defaulted on the payments due under the Note and Mortgage. (Am. Compl. ¶ 15.) After Plaintiff's default, on August 10, 2009, acting through Mortgage Electronic Registration Systems, Inc., its nominee on the Mortgage, Countrywide assigned the Mortgage to BAC Home Loans Servicing, L.P. (Am. Compl. ¶ 14.) Defendant did not provide to the VA Secretary the required notice of default. (Id. ¶ 21.) Plaintiff alleges that pursuant to section 3732(a)(4), receipt of the default notice would have triggered the Department of Veterans Affairs to provide foreclosure-avoidance counseling. (Id. ¶ 23.) After his default, Plaintiff did not receive any counseling from Defendant or the Veterans Administration about alternatives to foreclosure. (Id. ¶ 41.)

Shortly after Plaintiff's default, he was served with a summons and complaint in the Augusta District Court Foreclosure Action, detailed below. (Id. ¶ 42.) Because Plaintiff had not received the requisite counseling due to Defendant's failure to provide the required notice of default to the VA Secretary, Plaintiff immediately moved from his Residence. (Id. ¶ 43.) Plaintiff believed that upon being served with the foreclosure summons and complaint, he was required to

immediately vacate his Residence.  (<u>Id.</u> ¶ 44.)  Plaintiff believed that once he moved from his Residence, the Defendant would secure and maintain that property.  (<u>Id.</u> ¶ 45.)  Plaintiff maintained this belief because he was not provided the counseling required upon notice of default to the VA Secretary.  (<u>Id.</u> ¶ 46.)

After Plaintiff moved from his Residence, as he believed he was required to do, Defendant did not secure and maintain the property.  (<u>Id.</u> ¶ 47.)  As a consequence, Plaintiff's former Residence has been rendered valueless because the pipes froze, the house flooded and the entire Residence was left vacant and open to the vagaries of Maine weather for more than four years. (<u>Id.</u> ¶ 48.)  Prior to the service of the summons and complaint, the value of Plaintiff's Residence was approximately $175,000.  (<u>Id.</u> ¶ 49.)

After his service in the United States Army in Iraq, Plaintiff suffered from post-traumatic stress disorder.  (<u>Id.</u> ¶ 50.)  As a direct consequence of Defendant's failure to provide the required notice of default to the VA Secretary, Plaintiff suffered increased stress and distress, which caused his post-traumatic stress disorder to become substantially more severe, painful and harmful to him.  (<u>Id.</u> ¶ 54.)

## C.    The State Foreclosure Action

On September 22, 2009, BAC Home Loans Servicing, L.P.[2] commenced a civil foreclosure proceeding in Augusta District Court, in Augusta, Maine (the "Foreclosure Action"). (Am. Compl. ¶ 16.)  In October of 2009, Attorney Mark A. Kearns entered his appearance for Mark Beaulieu in the Foreclosure Action.  (<u>Id.</u> ¶ 55.)  Upon the appearance by Attorney Kearns, Beaulieu informed Defendant that he was represented by an attorney for all collections efforts relating to the subject Note and Mortgage.  (<u>Id.</u> ¶ 56.)

---

[2]  Defendant asserted it is the same entity as BAC Home Loans Servicing, L.P.; and, that Defendant is the holder of the obligation.  (Am. Compl. ¶ 17.)

At trial, Plaintiff's attorney asked a defense witness if the required notice had been sent to the VA Secretary before the commencement of the Foreclosure Action. (Id. ¶ 27.) The witness did not know whether the required notice had been sent. (Id. ¶ 28.) Defense counsel requested that the Court allow additional time for Defendant to produce proof that the required notice was sent to the VA Secretary before the commencement of the Foreclosure Action, which the Court allowed. (Id. ¶¶ 29, 30.) Ultimately, Defendant could not provide the requisite proof. (Id. ¶ 31.) Plaintiff argued that failure to notify the VA Secretary of his default prevented Defendant from foreclosing the mortgage. (Id. ¶ 32.)

On October 3, 2013, the Augusta District Court issued its decision (the "Decision") dismissing the Foreclosure Action.[3] (Id. ¶¶ 33, 34.) The Decision concluded, in part: "There is no question that the VA loan program was designed to help veteran-mortgagors. The statute clearly and explicitly directs that a lender notify the VA Secretary when a guaranteed loan is in default and before the lender files any suit or foreclosure action." (Id. ¶ 35.) The Augusta District Court ORDERED: "Accordingly, the court dismisses this action based on BOA's admitted failure to send a notice of default to the VA Secretary as required by federal law and the Mortgage." (Id. ¶ 36.) After the Decision was issued, Defendant did not file a request for findings of fact and conclusions of law, a request for reconsideration or appeal the Decision. (Id. ¶¶ 37-39.)

### D. Continued Efforts to Collect

After the Decision became final, Attorney Kearns sent a letter to defense counsel affirming his representation of Plaintiff for all collections activities in connection with the Note and Mortgage. (Am. Compl. ¶ 57.) The notice was delivered to defense counsel on December 19,

---

[3] The Decision was provided to the Court as an attachment to the Motion to Dismiss. See 10/2/13 Order of Dismissal (ECF No. 11-3). The Court takes judicial notice of this decision in connection with deciding the pending Motion. See Giragosian, 547 F.3d at 65.

2013 and informed Defendant of Plaintiff's suffering from post-traumatic stress disorder. The notice warned that any more direct communications from Defendant concerning the Note and Mortgage would create "new and more serious trauma." (Id. ¶¶ 59-60.)

After receipt of the notice, Defendant sent collection documents by U.S.P.S. directly to Plaintiff. (Id. ¶ 61.) On Christmas Eve, December 24, 2013 at 3:30 p.m. EST, Plaintiff received a telephone call from an employee of Defendant attempting to collect the subject Note and Mortgage. (Id. ¶ 62.) During the Christmas Eve call from Defendant, Plaintiff informed the caller that he is and has been represented by an attorney for all matters concerning the Note and Mortgage. (Id. ¶ 63.) The caller informed Plaintiff that he did not want to speak with Mr. Beaulieu's attorney; but, wanted to speak with Mr. Beaulieu directly because this is a matter between Defendant and Plaintiff and not Mr. Beaulieu's attorney. (Id. ¶ 64.) When Mr. Beaulieu began giving the Christmas Eve caller the name and contact information for his attorney, the caller hung-up. (Id. ¶ 65.)

### E.     The Litigation

On December 28, 2013 Plaintiff filed his Complaint in the Kennebec County Superior Court (ECF No. 1-1). On January 17, 2014, Defendant removed the case to this Court on the grounds of diversity jurisdiction (ECF No. 1). On January 23, 2014, Plaintiff filed an Amended Complaint (ECF No. 7), asserting eight causes of action. Specifically, Plaintiff asserts claims for wrongful use of civil proceedings (Count I), abuse of process (Count II), intentional infliction of emotional distress (Count III), intentional fraud (Count IV), negligent misrepresentation (Count V), breach of contract (Count VI), violation of the Maine Fair Debt Collection Practices Act (Count VII), and punitive damages (Count VIII). On February 24, 2014, Defendant moved to dismiss Plaintiff's Amended Complaint (ECF No. 11).

## III. DISCUSSION

Defendant has presented individual arguments in favor of dismissing each count of Plaintiff's Amended Complaint. Thus, the Court examines each count in turn.

### A. Count I: Wrongful Use of Civil Proceedings

Count I of the Amended Complaint asserts a claim for wrongful use of civil proceedings.

> The tort of wrongful use of civil proceedings exists where (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought.

Pepperell Trust Co. v. Mountain Heir Fin. Corp., 708 A.2d 651, 656 (Me. 1998) (citing Restatement (Second) of Torts § 674); see also Potter, Prescott, Jamieson & Nelson, P.C. v. Campbell, 708 A.2d 283, 286 (Me. 1998) (describing the tort as "an action was instituted against him without probable cause and with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings were based and that he received a favorable termination of the proceedings"). In the Amended Complaint, Plaintiff asserts that BANA lacked probable cause to initiate the Foreclosure Action because it failed to send the VA Secretary notice of the default, a prerequisite to filing a foreclosure action on a VA guaranteed loan. (Am. Compl. ¶¶ 68-70.) Plaintiff further claims that because the Foreclosure Action could not result in a foreclosure judgment, that Action was initiated and maintained with an improper purpose. (Id. ¶ 71.)

"To establish the absence of probable cause, the plaintiff must show that the defendant initiated the prosecution without reasonable grounds for believing that the party against whom the prosecution is initiated was guilty of the charged offense." Price v. Patterson, 606 A.2d 783, 785 (Me. 1992). In Nyer v. Carter, the Law Court found that the underlying action was instituted

without probable cause where the prosecuting attorney "obviously overlooked" that the governing statute had "no application by its express terms" to the case. 367 A.2d 1375, 1377 (Me. 1977). After a motion to dismiss was filed, "[t]he attorney, apparently recognizing that his complaint had not stated a cause of action, immediately dismissed the complaint with prejudice." Id.

Construing the facts in the light most favorable to Plaintiff, the Amended Complaint asserts that BANA instituted a lawsuit and either knew, or should have known, that it was unable to prevail on that lawsuit for failure to send the requisite notice to the VA Secretary prior to instituting the suit, and, therefore, BANA lacked probable cause to initiate the Foreclosure Action. At the outset, the Court notes that the lack of probable cause is not as definitive as in Nyer given the reasonably held and disputed positions regarding the notice in the Foreclosure Action. (See 10/2/13 Order of Dismissal after Bench Trial (ECF No. 11-3) at 4-6.)

Nonetheless, assuming that the Foreclosure Action was instituted without probable cause, the Court concludes that Plaintiff has failed to sufficiently allege an improper purpose. The Restatement (Second) of Torts, section 676 provides two relevant situations where a civil proceeding is initiated primarily for an improper purpose. Restatement (Second) of Torts § 676, cmt. c (1977) (listing five potential improper purposes, only two of which are relevant to this case). First, a law suit lacks a proper purpose where it is initiated because of "hostility or ill will." Restatement (Second) of Torts § 676, cmt. c.; see also Tuttle v. Raymond, 494 A.2d 1353, 1361 (Me. 1985) (providing that an improper purpose "exists where the defendant's tortious conduct is motivated by ill will toward the plaintiff" or "where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied"). Second, a proper purpose may be lacking where a lawsuit is initiated and the person initiating the lawsuit is aware that the

claim lacks merit. Restatement (Second) of Torts § 676, comment c.; <u>Nyer</u>, 367 A.2d at 1379 (stating that an improper purpose, or malice, may be inferred from a lack of probable cause: "The groundlessness of the suit may in many instances be so obvious and palpable, that the existence of malice may be inferred from it.").

In this case, the Court finds that the conduct alleged does not amount to an allegation of an improper purpose. Assuming the truth of the allegations and the soundness of the Decision by the state court, which this Court has no reason to question, the course of conduct was as follows: Plaintiff defaulted, BANA attempted to foreclose and the legal positions before the state court and the outcome of those arguments were heavily contested. (<u>See</u> 10/2/13 Order of Dismissal after Bench Trial (ECF No. 11-3) at 4-6.) It is not the case that the "groundlessness" of the suit was so apparent and palpable that an improper purpose can be inferred from its existence. Beyond the filing of the lawsuit, Plaintiff has not alleged any other grounds for or indicia of hostility or ill will. Therefore, Count I of the Amended Complaint must be dismissed.

**B.      Count II:  Abuse of Process**

In Count II, Plaintiff contends that the Amended Complaint states a claim for abuse of process. "In contrast to a claim of wrongful use of civil proceedings which lies where there is no basis for an entire claim, abuse of process covers the allegedly improper use of individual legal procedures after a suit has been filed properly." <u>Pepperell Trust Co.</u>, 708 A.2d at 655 n.8 (quoting <u>Simon v. Navon</u>, 71 F.3d 9, 15 (1st Cir. 1995)). "The elements of an abuse of process claim are that a defendant: (i) initiated or used a court document or process in a manner not proper in the regular conduct of proceedings, (ii) with the existence of an ulterior motive, and (iii) resulting in damage to the plaintiff." <u>Tanguay v. Asen</u>, 722 A.2d 49, 50 (Me. 1998) (internal citations omitted).

Plaintiff bases his allegation of abuse of process on BANA's prosecution of the Forfeiture Action without providing the requisite notice to the VA Secretary. (Am. Compl. ¶¶ 74-81.) Plaintiff alleges that at the trial on the Forfeiture Action, defense counsel first assured the district court that notice had been provided but after receiving additional time to produce the notice, Defendant then determined that the notice had not been provided to the VA Secretary prior to the commencement of the Forfeiture Action. (Id. ¶¶ 76-78.) Plaintiff asserts that in continuing to prosecute the Forfeiture Action after determining that notice had not been provided, BANA necessarily had an ulterior motive in continuing the Forfeiture Action and engaged in abuse of process. (Id. ¶¶ 79-80.)

Both the Law Court and the First Circuit have explained that "[r]egular use of process, such as filing a law suit, cannot constitute abuse, even if a decision to act or a decision not to act, was influenced by a wrongful motive." Tanguay, 722 A.2d at 50; see also Simon, 71 F.3d at 15. In Simon v. Navon, the First Circuit interpreted Maine law and explained that the filing of a lawsuit, alone, is not an abuse of process. 71 F.3d 9, 16 (1st Cir. 1995). Instead, the typical abuse of process case involves the misuse of procedures such as discovery, subpoenas and attachment. Id. Even if BANA had an ulterior motive, the mere filing and prosecution of a lawsuit, without more, is insufficient to state a claim for abuse of process. See Simon, 71 F.3d at 15-16; Potter, Prescott, Jamieson & Nelson, P.A., 708 A.2d at 286; Saliem v. Glovsky, 172 A. 4, 6 (Me. 1934) ("Regular use of process can not constitute abuse, even though the user was actuated by a wrongful motive, purpose or intent.") Count II must be dismissed for failure to state a claim.

**C.      Count III:  Intentional Infliction of Emotional Distress**

Under Maine law, a claim for intentional infliction of emotional distress (IIED) has

four elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress
>       or was certain or substantially certain that such distress would result from
>       his conduct;
> (2) the conduct was so extreme and outrageous as to exceed all possible bounds
>       of decency and must be regarded as atrocious, and utterly intolerable in a
>       civilized community;
> (3) the conduct of the defendant caused the plaintiff's emotional distress; and
> (4) the emotional distress suffered by the plaintiff was so severe that no
>       reasonable man could be expected to endure it.

See Bratton v. McDonough, 91 A.3d 1050, 1057-58 (Me. 2014) (citing Lyman v. Huber, 10 A.3d

707 (Me. 2010)).   Contrary to Plaintiff's argument that his IIED claim cannot be subject to

dismissal given his recitation of these just-listed elements in his complaint (Am. Compl. ¶¶ 82-

87), the Court can determine that the undisputed facts would not allow a rational factfinder to

conclude that Defendant's conduct was so extreme and outrageous as to be considered "atrocious"

and "utterly intolerable."  See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 511 (1st Cir.

1998)   ("Under Maine's jurisprudence, a court properly may determine, as a matter of law,

whether undisputed (or assumed) facts suffice to state a claim for intentional infliction of

emotional distress.") (citing Gray v. State, 624 A.2d 479, 484 (Me. 1993)).  The Court accepts

Plaintiff's allegations regarding his understandable emotional distress.   However, the Court

cannot conclude that Plaintiff's allegations are sufficient to satisfy the necessary second element

for an IIED claim.

Here, Plaintiff alleges that after he defaulted on his payments, BANA proceeded to file a

foreclosure action without first giving required notice to the VA.[4]  This conduct does not rise to

---

[4] Notably, the Augusta District Court noted that Beaulieu was sent the statutory notice required by 14 M.R.S.A. §
6111.  (10/2/2013 Order of Dismissal after Bench Trial (ECF No. 11-3) at 2.)

the level of being "so extreme and outrageous as to exceed all possible bounds of decency." Bratton, 91 A.3d at 1057. In reaching this conclusion the Court accepts Plaintiff's characterization of BANA's failure as "wrongful and illegal" and readily acknowledges that BANA's failure led to the dismissal of the underlying foreclosure action. However, this failed attempt at foreclosure cannot be reasonably characterized as atrocious and utterly intolerable conduct sufficient to state an IIED claim. See, e.g., Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013) (affirming dismissal of IIED claim, pled under Massachusetts law, by a mortgagor against her lender); James v. GMAC Mortgage LLC, 772 F. Supp. 2d 307, 324 (D. Me. 2011) ("The alleged actions, and failures to act, by [the loan servicer], while certainly far from admirable, do not rise to the level of 'conduct so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community.'"); Campbell v. Machias Sav. Bank, 865 F. Supp. 26, 36 (D. Me. 1994) (finding that "threats of foreclosure," "the filing of a criminal complaint," and "rude behavior" were insufficient to state an IIED claim against a bank). Therefore, the Court concludes that Plaintiff's Amended Complaint fails to state a claim for IIED as a matter of law and dismisses Count III.

### D. Counts IV & V: Fraud and Negligent Misrepresentation

In Counts IV and V, Plaintiff asserts causes of action for fraud and negligent misrepresentation. (Am. Compl. ¶¶ 88-104.) Plaintiff bases both claims on the same course of conduct. During the trial of the Foreclosure Action, Plaintiff's attorney asked a defense witness whether the required notice had been sent to the VA Secretary prior to the commencement of the foreclosure proceedings against Plaintiff. (Id. ¶ 89.) Defense counsel then responded that the proper notice had been provided. (Id. ¶¶ 90, 101.) Plaintiff maintains that the statement was false and that the notice had not, in fact, been sent. (Id. ¶¶ 92-93, 101-102.) Plaintiff maintains that

the statement was made either knowingly or with reckless disregard for its truth (id. ¶¶ 94, 95 (asserting a cause of action for fraud)) or was made in the absence of reasonable care (id. ¶ 103 (asserting a cause of action for negligent misrepresentation)). There is no dispute that the allegedly false statement at the base of Counts IV and V – that notice had been provided to the VA Secretary prior to the commencement of the Foreclosure Action – was made during the course of judicial proceedings before the state court. (Id. ¶¶ 89-90, 95-97, 101-03.) BANA argues that these counts must be dismissed for failure to state a claim.

Maine courts recognize an absolute common law privilege to attorneys and witnesses for relevant communications and testimony made preliminary to and during the course of litigation. Barnes v. McCrate, 32 Me. 442 (1851) (witnesses); Dineen v. Daughan, 381 A.2d 663, 664 (Me. 1978) (attorneys). "[P]ublic policy requires that witnesses shall not be restrained by the fear of being vexed by actions at the instance of those who are dissatisfied with their testimony." Dineen, 381 A.2d at 664 (internal citations omitted). In 1956, the Law Court stated the absolute privilege for statements made by witnesses during the course of legal proceedings "is a doctrine of the highest legal policy." Dunbar v. Greenlaw, 152 Me. 270, 276 (1956). Similarly, "[j]ust as a witness needs the freedom to be able to answer questions posed, free of any concern except the truth as he believes it to be, an attorney must be free to assert relevant statements to pursue fully the interests of his client." Dineen, 381 A.2d at 664-65. The privilege also extends to any allegations contained within the pleadings. Dunbar, 152 Me. at 223. In order for the privilege to apply, "the statements it protects must be relevant to the judicial proceeding." Dineen, 381 A.2d at 665; see also Dunbar, 152 Me. at 277.

The privilege has its origins in the common law of libel and slander, but it has been expanded to other torts. See Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP, 175 F.3d

14, 17-18 (1st Cir. 1999) (discussing New Hampshire and Massachusetts law in dismissing claims of malpractice and defamation and stating that "the policy underlying the privilege requires that civil claims other than for defamation also be extinguished. . . . [the] policy would be nullified if individuals barred from bringing defamation claims could seek damages under other theories of liability"); Hurley v. Towne, 156 A.2d 377, 379 (1959) (applying the privilege to a claim of false imprisonment); Heavrin v Nelson, 384 F.3d 199, 202-03 (6th Cir. 2004) (applying Kentucky law and applying the privilege to a claim of fraud); Hoffman v. Connecticut, 09-CV-79-B-H, 2009 WL 3055137, at *17 (D. Me. Aug. 7, 2009) (detailing how states have expanded the privilege to the torts of tortious interference (Florida), slander of title (New Jersey), "all tort actions" (Pennsylvania), intentional infliction of emotional distress (California) and malicious prosecution (Kentucky)) report and recommendation adopted as modified, 671 F. Supp. 2d 166 (D. Me. 2009). In Creamer v. Danks, applying Maine law, the First Circuit stated that "the absolute privilege for statements made in the course of judicial proceedings bars not only plaintiffs' defamation claim, but *all* the causes of action alleged against defendant, including negligence for professional malpractice." 863 F.2d 1037, 1037 (1st Cir. 1988). Accordingly, any statements that were relevant to the Foreclosure Action and were made during the course of the proceeding are protected by absolute immunity.

The statements that form the basis of Plaintiff's fraud and negligent misrepresentation claim were that BANA had sent the requisite notice to the VA Secretary prior to the commencement of the Foreclosure Action. (Am. Compl. ¶¶ 88-104.) For the privilege to apply, the statements must be relevant to the pending judicial proceeding. Dineen, 381 A.2d at 665. The statements that Plaintiff alleges were fraudulent or negligent misrepresentations – whether notice was sent of the default – were plainly relevant to the proceeding before the state court, a

foreclosure proceeding. To the extent that Plaintiff bases his allegations on any statements contained within the pleadings, those statements are also protected by the privilege.[5] See Dunbar, 152 Me. at 223. Because the statements that form the basis of Plaintiff's fraud and negligent misrepresentation claims are absolutely privileged, Counts IV and V fail to state a claim.

### E. Count VI: Breach of Contract

In Count VI, Beaulieu alleges that BANA breached the terms of the note and mortgage by failing to comply with the requirements of the Department of Veterans Affairs' loan guarantee program, which "were explicitly incorporated into both the Note and the Mortgage." (Am. Compl. ¶ 108; 10/2/13 Order of Dismissal after Bench Trial (ECF No. 11-3) at 2.) BANA seeks dismissal of this claim arguing that Plaintiff cannot state a cognizable claim for breach of the Note and Mortgage given his admitted default. Additionally, BANA essentially argues that its failure to provide notice as required by the statutes and regulations governing the Department of Veterans Affairs' loan guarantee program cannot be enforced by way of Beaulieu asserting a claim for breach of contract.

Turning first to BANA's latter argument, the Court agrees that the lack of notice to the VA, which Beaulieu pleads as a material breach by Defendant, cannot provide a basis for Plaintiff's breach of contract claim as a matter of law. It is well-established that veteran-borrowers are not able to enforce the duties of private lenders under this loan program via a stand-alone action in federal court. See, e.g., Rank v. Nimmo, 677 F.2d 692, 697 (9th Cir. 1982)

---

[5] To the extent Plaintiff is attempting to assert a claim for fraud on the court, the Court notes that fraud on the court is not available as an independent cause of action based on conduct that occurred before a different court. See Bradbury v. GMAC Mortgage, LLC, 780 F. Supp. 2d 108, 112 (D. Me. 2011) ("Fraud on the court may be a ground for a perjury prosecution, for vacating a judgment, for lawyer discipline, or for sanctions under Me. R. Civ. P. 11, but it is not a ground for the recovery of damages by a party in a later lawsuit. The Law Court has referred to such conduct only as the basis for challenging the validity of a judgment and obtaining relief from the judgment, as part of the state court's equity jurisdiction.") To the extent Plaintiff is attempting to assert a cause of action for malpractice against BANA's counsel with regard to the Foreclosure Action, Plaintiff's claim must also be dismissed. Barnes v. McGough, 623 A.2d 144, 146 (Me. 1993) (holding that "an attorney owes no duty to his client's adversary").

("[N]either the statutory language nor the legislative history of the VA Act provides any 'indication of legislative intent ... to create such a remedy' against the private lender."); <u>Simpson v. Cleland</u>, 640 F.2d 1354, 1359 (D.C. Cir. 1981); <u>Chapman v. Mortgage Elec. Registration Sys., Inc.</u>, 1:13-CV-2305-RWS, 2013 WL 4855259 (N.D. Ga. Sept. 11, 2013) ("[V]eteran-borrowers lack an express or implied right of action in federal court to enforce the duties of private lenders under the VA statute.") (citing <u>Bright v. Nimmo</u>, 756 F.2d 1513, 1515–17 (11th Cir. 1985)). Given the precedents that find no express or implied cause of action for veteran-borrowers seeking remedy for lenders' failure to comply with the VA requirements, the Court concludes that Beaulieu cannot pursue such a remedy by way of a standalone breach of contract claim.

With respect to BANA's alternative argument, it is not clear that Beaulieu's default categorically precludes him from stating any breach of contract claim under the Note and Mortgage. This may be the rule in other states. <u>See, e.g.</u>, <u>Dobbins v. Redden</u>, 785 S.W.2d 377, 378 (Tex. 1990) ("It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach." (internal citations and quotations omitted)). However, under Maine law, "only a breach of contract so material as to amount to a repudiation of the contract itself will bar the breaching party from recovering any damages from the other party when that party is also in breach." <u>Roger Edwards, LLC. v. Fiddes & Son, Ltd.</u>, 245 F. Supp. 2d 251, 263 (D. Me. 2003) <u>aff'd in part, dismissed in part sub nom.</u> <u>Roger Edwards, LLC v. Fiddes & Sons, Ltd.</u>, 387 F.3d 90 (1st Cir. 2004); <u>see also</u> <u>Acoustic Processing Tech., Inc. v. KDH Elec. Sys., Inc.</u>, 697 F. Supp. 2d 146, 153-54 (D. Me. 2010) ("Under Maine law, a material breach of contract justifies an injured party in regarding 'the whole transaction as at an end.'") (quoting <u>Assoc. Builders, Inc. v. Coggins</u>, 722 A.2d 1278, 1280 (Me. 1999)). Because the Amended Complaint and the Motion to Dismiss do not provide the Court with the necessary basis to make

this materiality determination using "traditional contract principles," the Court simply has no basis to conclude that Beaulieu's default forecloses any breach of contract claim against the Lender on his Note and Mortgage. See Acoustic Processing Tech., Inc., 697 F. Supp. 2d at 154 (laying out the multiple factors to be considered in determining if a breach is material).

Nonetheless, having concluded that Count VI fails to state a proper claim for breach of contract because the only breach alleged is a violation of the VA notice requirements, the Court GRANTS the Motion to Dismiss as to Count VI.

### F. Count VII: Violation of Maine Fair Debt Collection Practices Act

BANA seeks dismissal of Beaulieu's claim under the Maine Fair Debt Collection Practices Act (MFDCPA), 32 M.R.S.A. §§ 11001 *et seq.*, claiming that it does not fall within the statutory definition of "debt collector." (Def. Mot. to Dismiss at 15-16.)

The MFDCPA generally defines "debt collector" as a person or entity "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 32 M.R.S.A § 11002(6).[6] To further clarify the definition, MFDCPA excludes, in relevant part, "[a]ny person whose collection activities are confined to and directly related to the operation of a business other than that of a debt collector, such as, but not limited to, financial institutions regulated under Title 9-B" and "[a]ny person collecting or attempting to collect any debt owed or due, or asserted to be owed or due, to another to the extent that the activity . . . [c]oncerns a debt which was not in default at the time it was obtained by that person." 32 M.R.S.A. § 11003(8) & (7). However, MFDCPA further indicates that notwithstanding the just-quoted portion of section 11003, "'debt collector' includes any creditor who, in the process of

---

[6] Notably, the Federal Debt Collection Practices Act contains an identical definition of "debt collector." 15 U.S.C. § 1692a(6).

collecting the creditor's own debts, uses any name other than the creditor's that would indicate that a 3rd person is collecting or attempting to collect these debts." Id. at § 11002.

Under this definition, Plaintiff has pled a plausible claim that Defendant qualifies as a debt collector. Beaulieu's Note and Mortgage list his lender as "Countrywide Bank, FSB." Notably, the Amended Complaint (and the underlying Augusta District Court decision) both note that "BAC Home Loans Servicing, L.P." became the servicer of this loan after it was in default and it was this entity that initiated the state foreclosure proceeding. (See Am. Compl. ¶¶14; 16-17; 10/2/2013 Order of Dismissal after Bench Trial (ECF No. 11-3) at 2.) Courts have held that loan servicers who take on loans only after they are in default may fall under the definition of debt collector. See, e.g., Bridge v. Ocwen Federal Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012); Hamilton v. Fed. Home Loan Mortgage Corp., 2:13-CV-00414-JAW, 2014 WL 4594733 at *18-*19 (D. Me. Sept. 15, 2014); Yarney v. Ocwen Loan Servicing, LLC, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013) (explaining that "mortgage servicers are considered debt collectors under the FDCPA if they became servicers after the debt they service fell into default").

To the extent that BANA was "substituted" in the state foreclosure case and, is, as a result, named as the Defendant in the present case, this substitution occurred based on BANA's alleged assertion that "it is the same entity as BAC Home Loans Servicing, L.P. and is the holder of [the Note and Mortgage]." (Am. Compl. ¶ 17.) At the motion to dismiss stage, these combined allegations plausibly suggest that BANA was "using a name other than its own" that indicated a third party was attempting to collect on Mr. Beaulieu's default. Additionally, the timeline that can be established based on the pleading and the underlying Augusta District Court decision support a plausible allegation that BAC Home Loans Servicing, L.P. became the collector of this debt after it was already in default. Cf. Parker v. BAC Home Loans Servicing LP, 831 F. Supp.

2d 88, 93 (D.D.C. 2011) (concluding BAC Home Loans Servicing did not fall under the FDCPA when it had become the servicer of plaintiff's loan prior to his default).

It may well be that BANA can present this Court with evidence that will counter these plausible allegations. Additionally, it may turn out that Defendant can prove that all of the communications and activities that underlie Beaulieu's MFDCPA claim were clearly taken by BANA while it was, in fact, the holder of the note and mortgage. However, at this stage, the Court does not have such evidence before it, nor could it consider such evidence in connection with a motion to dismiss. Therefore, the Court finds that Count VII states a claim that survives the pending Motion to Dismiss.

### G. Count VIII: Punitive Damages

Punitive damages are not a separate and distinct cause of action but an element of damages that may be recovered on certain claims. See Frank v. L.L. Bean, Inc., 352 F. Supp. 2d 8, 13 (D. Me. 2005). Under Maine law, a punitive damage award must be based on tortious conduct and requires the plaintiff to establish by clear and convincing evidence that the defendant's tortious conduct was motivated by actual ill will or was so outrageous that malice implied. Waxler v. Waxler, 699 A.2d 1161, 1165 (D. Me. 1997). No matter how egregious a contractual breach has been alleged, punitive damages are unavailable under Maine law for breach of contract. Drinkwater v. Patten Realty Corp., 563 A.2d 772, 776 (Me. 1989). Given the Court's dismissal of Plaintiff's other tort and contract claims, the Court finds Count VIII is also subject to dismissal. However, the dismissal of Count VIII in no way prevents Plaintiff from pursuing any of the damages that may be recoverable under his remaining MFDCPA claim (Count VII). See 32 M.R.S.A. § 11054.

**IV. CONCLUSION**

For the reasons just stated, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 11) is GRANTED IN PART & DENIED IN PART.  In accordance with this ruling, Counts I-VI and Count VIII are dismissed with prejudice.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 29th day of September, 2014.